# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

_____
)
)
EMPLOYEE A, Federal Employee, and    )
EMPLOYEE B, Federal Employee,      )        Case No. _____
)
)
     Plaintiffs,          )
)
)
       v.            )        **COMPLAINT FOR**
)        **DECLARATORY AND**
)        **INJUNCTIVE RELIEF**
JOSEPH R. BIDEN in his official capacity  )
as President of the United States;     )
XAVIER BECERRA in his official capacity  )
as Secretary of Health and Human Services;  )
LLOYD J. AUSTIN III in his official    )
capacity as Secretary of Defense,     )
)
)
     Defendants.       )
)
_____ )

## <u>VERIFIED COMPLAINT</u>

     Plaintiffs herein, proceeding under pseudonyms for the reasons set forth below, complain of the Defendants as follows. A joint motion for emergency temporary relief and to proceed under pseudonyms is forthcoming.

## NATURE OF THE ACTION

     1.    This action seeks injunctive and declaratory relief from Presidential Executive Order 14043, promulgated on September 9, 2021, requiring Coronavirus Disease 2019 vaccination for federal government employees (the "Vaccine Mandate"). *See* Exhibit A to this Complaint.

2. Plaintiffs will move this Court for temporary and preliminary injunctive relief in light of the **November 8, 2021** deadline for compliance with taking the first dose of a single dose vaccine or second dose of a two-dose vaccine, after which Plaintiffs, who reserve the right to abstain from providing their COVID-19 vaccination status, will face irreparable harm through termination of employment and tarnishing of their professional records contained in their Official Personnel Files.

## INTRODUCTION

*"That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed"*
PREAMBLE TO THE DECLARATION OF INDEPENDENCE

3. In a society composed of different groups with different interests, it will inevitably be the case from time to time that the majority will seek to exert its will on the minority. It is the duty of the Courts to guard against the encroachment of the rights of the minority, in whatever form it happens to take. "It is of great importance in a republic not only to guard the society against the oppression of its rulers, but to guard one part of the society against the injustice of the other part. Different interests necessarily exist in different classes of citizens. If a majority be united by a common interest, the rights of the minority will be insecure." Federalist No. 51.

4. The President has full knowledge that a portion of the Federal Workforce, the vast majority of which have been practicing social distancing, mask wearing, temperature checks and other responsible safety measures *for eighteen months now* against SARS-CoV-2, the virus that causes COVID-19, are going to be facing loss of employment because they have declined to respond with their vaccination status.

5. Historically, the United States has faced disease outbreaks throughout its 250 years; however, never before has the Office of the President been used to require federal employees to take a vaccine or lose their jobs. "The United States government began a massive program to

inoculate the public against the swine flu.  The program experienced a variety of problems, and in December 1976 the shots were suspended for fear that they might be linked to several cases of paralysis."  World Book, Inc.  The World Book Encyclopedia, "Influenza," 1985.  It is generally accepted public knowledge that the COVID-19 vaccines in question are linked to well beyond "several cases" of adverse reactions.

6.    By moving the goal posts on what constitutes cause for termination, Executive Order 14043 attempts to unilaterally bypass the normal public debates and discourse that necessarily influence the legislative lawmaking process, on a matter hotly contested by the States and the general Body Politic.  The unfortunate result is the livelihoods and reputations of many federal employees are placed in jeopardy, without immediate judicial intervention.

7.    Despite the checks and balances that exist within Government to secure the rights of the governed, there are epochs throughout U.S. history where Government has supported the use of force to violate the rights of one group in favor of the will of another.  Such use of force may seem expedient to exert the will of one group over another, whether it be through executive orders (e.g. EO 9066- Japanese-American Internment 1942-44), legislation (e.g. Indian Removal Act in 1830), or the Court (e.g. *Buck v. Bell,* 274 U.S. 200 (1927)).  However, posterity does not kindly judge such force when seen through a more dispassionate future lens.  As James Madison in Federalist No. 10 noted:

> There are again two methods of removing the causes of faction: the one, by destroying the liberty which is essential to its existence [. . .] It could never be more truly said than of the first remedy, that it was worse than the disease. Liberty is to faction what air is to fire, an ailment without which it instantly expires.  But it could not be less folly to abolish liberty, which is essential to political life, because it nourishes faction, than it would be to wish the annihilation

> of air, which is essential to animal life, because it imparts to
> fire its destructive agency.

Federalist No. 10 (James Madison).

8.    Due to the national emergency of World War II, President Franklin D. Roosevelt issued Executive Order 9066, which authorized him to imprison Japanese Americans in internment camps from 1942 to 1945.  In the case of *Korematsu v. United States*, 323 U.S. 214 (1944), the Judiciary unjustly upheld Japanese internment (though it has since been discredited).   In his dissenting opinion, Justice Owen J. Roberts wrote, "Again, it is a new doctrine of constitutional law that one indicted for disobedience to an unconstitutional statute may not defend on the ground of the invalidity of the statute, but must obey it though he knows it is no law, and, after he has suffered the disgrace of conviction and lost his liberty by sentence, then, and not before, seek from within prison walls, to test the validity of the law." *Id*. *at 233.  This unconstitutional violation of the rights of American citizens was a grievous sin against the citizens of our great nation.  It stands as an example not only of abuse of the Executive power, when an unlawful executive order to meet the needs of an emergency violated the constitutional rights of a minority group, but also as a failure of the Judiciary to stand against such an order that trampled the rights of American citizens.

9.    As the 1920s eugenics movement in the U.S. was underway, those in power used the case of *Buck v. Bell*, 274 U.S. 200 (1927) to further their agenda of forcibly sterilizing certain members of society they deemed unfit (e.g., Carrie Buck having a child out of wedlock). In the majority opinion, in which the Supreme Court failed to protect the vulnerable, Justice Oliver Wendell Holmes wrote, "It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for imbecility, society can prevent those who are manifestly unfit from continuing their kind . . . [t]hree generations of imbeciles is enough." *Id*. *at

207. Stunningly, the Court goes on to say: "The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes." *Id.*

10.   Another dark stain on American history involves the Indian Removal Act of 1830. Congress passed the act, allowing the President to offer land to the West of the Mississippi River to the Native American tribes in a voluntary exchange for their homeland. What followed was a time of a majority faction pressing upon the Native Americans to give into this unjust exchange and give up the rights they already had secured through treaties with Congress. The Cherokee nation resisted the efforts to coerce them to give up their land, and even fought in court against the violation of their rights. The Cherokee case against Georgia went to the Supreme Court, and Chief Justice John Marshall in the majority opinion ruled that the States could not assert control over the Native American tribes. Legend has it that President Jackson taunted, saying, "John Marshall has made his decision; now let him enforce it." Ultimately, at the President's direction, the U.S. Army forcibly removed the Cherokee Nation from their homeland along what has become known as the Trail of Tears.

11.   The principle of Government self-restraint is reflected in the writings of James Madison, the Father of the Constitution:

> The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? […] In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.

Federalist No. 51 (Madison)

12.     Executive Order 14043 presumes to accrue to the President an authority that has never before existed in the history of this country, to fundamentally alter the conditions of employment for the entire Federal Civil Service based on *personal health care choices*.  This is a radical departure from the common notion of what traditionally constitutes the employer-employee relationship and directly violates Plaintiffs' and all federal employees' constitutional right to privacy.  As the Supreme Court held just last year, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021).

## JURISDICTION AND VENUE

13.     This action arises under the Ninth, Tenth, and Fifth Amendments to the United States Constitution, the Separation of Powers doctrine, and the constitutional Right to Privacy that has become so engrained in the fabric of our society.

14.     This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §1331. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because both plaintiffs' agencies are headquartered in this District and a substantial part of the events or omissions giving rising to the claims occurred in this District.

15.     The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §706 and under the Declaratory Judgment Act, 28 U.S.C. §2201 - §2202. The Court is authorized to grant the plaintiffs' prayer for temporary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**THE PARTIES**

**Plaintiff "Employee A"**

16.     Employee A is a sixteen-year federal employee with the U.S. Department of Defense, a graduate of the Air Force Academy and currently employed by the Defense Information Systems Agency (DISA), which is located at Fort Meade, Maryland.

17.     His agency intends to enforce the Vaccine Mandate on all personnel in accordance with the Safer Federal Workforce Task Force[1] schedule and timeframe set up by the Office of Personnel Management (OPM) with the following deadlines:

> **November 8, 2021**     Receive their last dose of a single dose vaccine,
>
> or second dose of a two-dose vaccine
>
> **November 22, 2021**   Must be considered fully vaccinated

Exhibit B attached to this Complaint.

18.     Employee A is not going to provide proof of his vaccination status, and his agency requires proof of compliance with the Vaccine Mandate as early as November 8, 2021 or face disciplinary action leading to removal and a permanent mark of misconduct on his Official Personnel File (OPF), thereby affecting future employment prospects either in the federal government or private sector.

19.     The Vaccine Mandate will cause Employee A to suffer permanent irreparable harm to his occupation and reputation in absence of injunctive relief barring enforcement of the Vaccine Mandate.

---

[1] For these deadlines and further information on the requirements, see
https://www.saferfederalworkforce.gov/faq/vaccinations/ [last accessed 15 October 2021].

**Plaintiff "Employee B"**

20.     Employee B is a federal employee with the U.S. Department of Health and Human Services currently employed by the U.S. Food and Drug Administration (FDA), which is located in Silver Spring, MD.  She works in a 100% remote work arrangement.

21.     The FDA intends to enforce the Vaccine Mandate in accordance with the Safer Federal Workforce Task Force schedule and timeframe set up by the Office of Personnel Management (OPM) as laid out in ¶17.

22.     Employee B is not going to provide proof of her vaccination status, and her agency requires proof of compliance with the Vaccine Mandate as early as November 8, 2021 or face disciplinary action leading to removal and a permanent mark of misconduct on her Official Personnel File (OPF), thereby affecting future employment prospects either in the federal government or private sector.

23.     The Vaccine Mandate will cause Employee B to suffer permanent irreparable harm to her occupation and reputation in absence of injunctive relief barring enforcement of the Vaccine Mandate.

**Defendants**

24.     Defendant Joseph R. Biden is the President of the United States, who is sued in his official capacity.

25.     Defendant Xavier Becerra is Secretary of the U.S. Department of Health and Human Services, and who is sued in his official capacity.

26.     Defendant Lloyd J. Austin III is Secretary of the U.S. Department of Defense, and who is sued in his official capacity.

## Reason for Proceeding with Pseudonyms

27.     The Vaccine Mandate has caused an atmosphere of hostility inside the Federal Government workforce against those who have abstained from the vaccinations or declined to provide vaccination status.  Part of a wider division forming nationwide that is becoming more and more pronounced due to a large portion of the country abstaining from vaccination, the vaccine mandate on the federal workforce is in turn creating an environment and opportunity for intimidation of those who have made a different choice.

28.     There are a growing number of instances of discrimination against those who have chosen to not be vaccinated, including a mother's visitation rights temporarily being revoked[2], a Florida landlord refusing to renew unvaccinated tenants' leases[3], and a Colorado-based health system denying organ transplants[4].

29.     Without protection through anonymity, Plaintiffs will likely experience retaliation from their supervisors and hostility from their co-workers within the very jobs in which they faithfully serve and are hoping to protect.

30.     The internal medical condition of one's body, including the presence of vaccines, is highly personal and confidential, and therefore a protected privacy interest within the Constitution.

31.     Employees such as Plaintiffs have a reasonable expectation of privacy that their internal bodily condition will not be demanded, collected, or recorded by their employers, nor will it be disclosed to other individuals, agencies, or entities without their consent.

---

[2] https://www.washingtonpost.com/nation/2021/08/30/chicago-vaccine-custody-rebecca-firlit/
[3] https://www.washingtonpost.com/nation/2021/09/15/florida-landlord-requiring-covid-vaccine-proof/
[4] https://www.washingtonpost.com/health/2021/10/05/uchealth-transplant-unvaccinated/

32.     Executive Order 14043 is being implemented by department heads to ascertain, collect, and record vaccination status of employees including Plaintiffs.  Ex. D (Privacy Act justification).  *See also* Ex. B, p. 6.

33.     The Federal Government is *not* a covered entity subject to the stringent protections of HIPAA which prohibits healthcare providers and businesses from disclosing personally identifiable information and protected health information to anyone without the patient's consent.

34.     Without the ability to proceed anonymously, confidential medical information about Plaintiffs and Plaintiffs' positions on COVID-19 vaccines will become widely known by their peers and the public, which could become cause for discrimination on the basis of vaccination status in their current employment and future employment opportunities.

## COUNT I

## VIOLATION OF THE SEPARATION OF POWERS DOCTRINE OF THE TENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

35.     Plaintiffs hereby reallege and adopt ¶¶1 – 34 as if fully set forth herein.

36.     The Tenth Amendment provides:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, **are reserved to the States respectively, or to the people**.

U.S. Const. Am. 10 (emphasis added)

37.     The Vaccine Mandate compels plaintiffs and all federal employees, who work in various States respectively, to make a significant health decision where laws affecting health have traditionally always fallen under the purview of State police and health regulatory power since our nation's founding.  *See, e.g., Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (Massachusetts law

empowered local boards of health to mandate vaccinations, in this case for smallpox, with financial penalties for noncompliance).

38.     Under our federalist system of government, certain powers are enumerated to the federal government, which does not include the general police power reserved exclusively to the States under the Tenth Amendment. *Printz v. United States*, 521 U.S. 898, 919 (1997).

39.     The States have asserted their authority in this area, and are split.  Many States have either passed laws against vaccination mandates or issued executive orders from the Governors making vaccination passports illegal for businesses to require them for employment purposes or for any other purpose.[5]

40.     By forcing a Federal Workforce of approximately 2 Million employees, located regionally throughout the United States, Executive Order 14043 attempts to coopt State regulatory authority in this area.  The vast majority of federal employees perform their duties within the Continental United States, as is the case with both Plaintiffs, in marked contrast to those on assignment overseas, particularly in developing countries, where American States do not have jurisdiction to implement health laws.

41.     The Vaccine Mandate, on its face and as applied, will cause irreparable harm and actual and undue hardship on plaintiffs and the occupational, professional, and economic consequences pleaded above.

---

[5]  Alabama (by law May 24, 2021); Arizona (by executive order April 19, 2021); Arkansas (by law April 28, 2021); Florida (by law, May 2021); Georgia (by executive order, May 25, 2021); Idaho (by executive order, April 7, 2021); Indiana (by law, April 29, 2021); Iowa (by law, May 20, 2021); Michigan (bill pending, as of June 2, 2021); Montana (by executive order, April 13, 2021); New Hampshire (bill pending as of June 1, 2021); North Dakota (by law April 29, 2021); South Carolina (by executive order, May 11, 2021); South Dakota (by executive order April 21, 2021); Texas (by executive order April 6, 2021 and by law June 7, 2021); Wyoming (by executive order May 7, 2021).    U.S. News & World Report, June 1, 2021.  https://www.usnews.com/news/best-states/articles/which-states-have-banned-vaccine-passports#nh (last accessed October 19, 2021).

42.     Plaintiffs have no adequate remedy at law for the imminent deprivation of their rights under the Tenth Amendment.

## COUNT II

## VIOLATION OF THE NINTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES AND THE RIGHT TO PRIVACY

43.     Plaintiffs hereby reallege and adopt ¶¶1 – 42 as if fully set forth herein.

44.     The Ninth Amendment provides:

The enumeration in the Constitution of certain rights shall not be construed to deny or disparage **others retained by the people**.

U.S. Const. Am. 9 (emphasis added)

45.     In *Missouri v. McNeely*, 569 U.S. 141 (2013), the Supreme Court recognized a significant, constitutionally protected privacy interest: "We have never retreated from our recognition that any compelled intrusion into the human body implicates **significant, constitutionally protected privacy interests**." *Id.* *at 159 (emphasis added).

46.     The privacy interests involved in penetrating the skin and into the veins are so particularly invasive that the Supreme held in the Search Incident to Arrest Doctrine that unlike the use of breath tests in drunk driving stops a search warrant is required for a blood draw. *Birchfield v. North Dakota*, 579 U.S. ___ (2016).  Notably, in *Missouri v. McNeely, supra*, Justice Sotomayor, writing for the majority, found it persuasive that a clear majority of the States placed significant restrictions on when police may obtain a blood sample despite a suspect's refusal, often limiting testing to cases involving accidents resulting in death or serious injury, or *prohibit nonconsensual blood tests altogether*.   133 S. Ct. *at 1566, n.9 (state statutes catalogued).

47.     In a similar way that a breath test at a DUI stop is found to be a lesser restrictive option than a blood draw to further the government's interests, so too in the case of health in the

workplace, plaintiffs and all federal employees have demonstrated over the past *eighteen months* that there are other methods to successfully promote a healthy work environment.

48.     Even beyond the case of using a needle to draw blood, the right of an American citizen to determine what substances for medical reasons are injected into the body is just as fundamental as marital privacy, i.e. "My Body, My Choice," and deserving of strong protection. *See Griswold v. Connecticut*, 381 U.S. 479, 497 (1965) ("[I]f, upon a showing of a slender basis of rationality, a law outlawing voluntary birth control by married persons is valid, then, by the same reasoning, a law requiring compulsory birth control also would seem to be valid . . . both types of law would unjustifiably intrude upon rights of marital privacy which are constitutionally protected."). *See also Canterbury v. Spence*, 464 F. 2d 772, 780 (D.C. Cir. May 1972) ("the root premise is the concept, **fundamental in American jurisprudence**, that '[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body . . .'" quoting *Schloendorff v. Society of New York Hospital*, 105 N.E. 92, 93 (N.Y. 1914)]), cert. denied, 409 U.S. 1064 (1972) (emphasis added).

49.     The well-established Doctrine of Informed Consent in the doctor-patient relationship in the United States poses as a direct obstacle in the face of the Vaccine Mandate and Executive Order 14043 because the logical corollary of this doctrine is the patient's right to refuse treatment.  The Doctrine of Informed Consent is inextricably intertwined with the common law rights of privacy, bodily integrity, and self-determination.  *See* Lawrence J. Nelson, Brian P. Buggy, and Carol J. Weil, "Forced Medical Treatment of Pregnant Women: 'Compelling Each to Live as Seems Good to the Rest,'" 37 Hastings Law Journal, 703, 758 (1986).

50.     Defendants refused to explore available reasonable alternatives to the Vaccine Mandate or engage in any interactive, meaningful, or good faith process with Plaintiffs, or others

similarly situated, on ways they could in fact perform the essential functions of their positions without a COVID-19 vaccine.

51.     The Vaccine Mandate, on its face and as applied, will cause irreparable harm and actual and undue hardship on plaintiffs and the occupational, professional, and economic consequences pleaded above.

52.     Plaintiffs have no adequate remedy at law for the imminent deprivation of their rights under the Ninth Amendment and their constitutional Right of Privacy.

## COUNT III

## VIOLATION OF THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES THROUGH THE MISAPPLICATION OF 5 U.S.C. §7503 GIVEN LONGSTANDING CUSTOMS OF THE EMPLOYER-EMPLOYEE RELATIONSHIP

53.     Plaintiffs reallege and adopt ¶¶1 – 52 as if fully set forth herein.

54.     The Fifth Amendment provides, in part:

> No person shall be . . . deprived of life, liberty, or property, without due process of law…

> U.S. Const. Am. 5

55.     Federal employees cannot be fired without cause.  They have a protected property interest.  Furthermore, they are entitled to due process before they can be terminated.

56.     The key language touching on adverse actions for federal employees, "such cause as will promote the efficiency of the service," 5 U.S.C. §7503, is to be construed in light of "longstanding principles of employer-employee relationships, like those developed in the private sector . . ." *Arnett v. Kennedy*, 416 U.S. 134, 160 (1974).

57.     It is axiomatic that private medical information, known as Protected Health Information (PHI), is absolutely protected from divulgence in traditional American employment,

and Congress has taken the added step of making unlawful any kind of discrimination on the basis of it. *Cf.* Americans with Disabilities Act (ADA), signed into law in 1990.

58.     By moving the goal posts on what constitutes cause for termination, Executive Order 14043 seeks to unilaterally do an end run, or "workaround,"[6] around the procedural due process protections in place for federal employees. Notice and an opportunity to be heard are the bedrock of due process protection; one cannot be had without the other. Nevertheless, Defendants Xavier Becerra and Lloyd J. Austin III, as secretaries of their respective departments, seek to implement the Vaccine Mandate by summary dismissal of Plaintiffs and all not in compliance, without any meaningful opportunity to be heard. *See* Exhibits B and C, attached to this Complaint.

59.     Aside from the recognized property interest in plaintiffs' jobs, there exists an important **liberty** interest to make informed medical decisions for oneself, which is guaranteed by the due process clause. A number of courts have held that even persons confined in the State's custody have a constitutional right to refuse treatment. *See, e.g., Mackey v. Procunier*, 477 F.2d 877 (9th Cir. 1973); *Knecht v. Gillman*, 488 F.2d 1136 (8th Cir. 1973); *Scott v. Plante*, 532 F.2d 939 (3rd Cir. 1976); *Bell v. Wayne County General Hospital*, 384 F. Supp. 1085, 1100 (E.D. Mich. 1974); *Rennie v. Klein*, 462 F. Supp. 1131 (D.N.J. 1978); *Rogers v. Okin*, 478 F. Supp. 1342 (D. Mass. 1979). The court in *Davis v. Hubbard*, 506 F. Supp. 915 (N.D. Ohio 1980) puts it well: "the source of the right [to refuse medical treatment] can best be understood as substantive due process, or phrased differently, as an aspect of 'liberty' guaranteed by the due process clause." *Id.* at 929.

---

[6]  For further elucidation on the White House's posture of seeking to circumvent the Constitution, White House Chief of Staff Ron Klain retweeted a post stating that using OSHA regulations for the parallel executive order mandating vaccines for businesses nationwide was the ultimate "work-around." Stephen M. Lepore, "He Said the Quiet Part Out Loud," *The Daily Mail* (September 10, 2021), https://www.dailymail.co.uk/news/article-9976957/Republicans-furious-White-House-Chief-Staff-retweets-post-calling-vaccine-mandate-workaround.html

60.     The Vaccine Mandate is not the least restrictive means of achieving the stated purpose of Executive Order 14043, "ensuring the health and safety of the Federal workforce and the efficiency of the civil service" (Exhibit A, Section 1), which could be achieved by the same protective measures (masking, temperature checks, social distancing, teleworking, etc.) already being required of both the vaccinated and unvaccinated.

61.     Defendants refused to explore available reasonable alternatives to the Vaccine Mandate or engage in any interactive, meaningful, or good faith process with Plaintiffs, or others similarly situated, on ways they could in fact perform the essential functions of their positions without a COVID-19 vaccine.

62.     The Vaccine Mandate, on its face and as applied, will cause irreparable harm and actual and undue hardship on plaintiffs and the occupational, professional, and economic consequences pleaded above.

63.     Plaintiffs have no adequate remedy at law for the imminent deprivation of their rights under the Fifth Amendment of the Constitution of the United States.

## COUNT IV

## VIOLATION OF THE SEPARATION OF POWERS BY OVERSTEPPING THE

## EMERGENCY POWERS OF THE PRESIDENT

## (ARTICLE I and ARTICLE II)

64.     Plaintiffs reallege and adopt ¶¶1 – 63 as if fully set forth herein.

65.     Article I, Section 8 of the Constitution provides:

[Congress] shall make **Rules for the Government** and Regulation of the land and naval forces;

[Congress] shall make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested

by this Constitution in the Government of the United States or in any Department or Officer thereof.

U.S. Const. Art. I, Sec. 8 (emphasis added)

66.     Article II, Section 3 of the Constitution provides:

[The President] shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient.

U.S. Const. Art. II, Sec. 3

67.     Between March 2020, when COVID-19 was first declared a pandemic, and one year later on March 2021 when vaccines for COVID-19 were first made available to the general public, the President had plenty of time to approach Congress for legislation that directly impacted personal health care choices of Plaintiffs and two million federal employees.  From March 2021 to the signing of Executive Order 14043 on September 9, 2021 the President delivered at least one State of the Union to a Joint Session of Congress on April 29, 2021.

68.     Congress has clearly chosen not to mandate COVID-19 vaccines for federal employees, or anyone else for that matter, because the health and police power are in the province of the States.

69.     Notwithstanding the above, the President, through Executive Order 14043, set out to make law arbitrarily by his own policy preference, and then directed the federal agencies to implement it.  Ex. A, Sec. 2.  This the President may not do, even in times of emergency, as laid out in the seminal decision *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).  When the collective bargaining process with steel company workers failed during the Korean War, President Harry Truman concluded that action was necessary to avert a national catastrophe which would inevitably result from a stoppage of steel production and issued Executive Order 10340 directing the Secretary of Commerce to take possession of and operate most of the nation's steel

mills. The Supreme Court found in *Youngstown* that the president lacked the power without authorization from Congress.

70. There is neither express nor implied authorization from Congress for the President to make a sweeping regulation for the entire Federal Civil Service that fundamentally alters the conditions of employment based on a personal health care choice, for a virus with a 99% survival rate.

71. The Vaccine Mandate, on its face and as applied, will cause irreparable harm and actual and undue hardship on plaintiffs and the occupational, professional, and economic consequences pleaded above.

72. Plaintiffs have no adequate remedy at law for the imminent deprivation of their rights under the Separation of Powers doctrine of the Constitution of the United States.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter relief as follows to all Counts:

A. A nationwide temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining Defendants, their officers and agents, from enforcing the Vaccine Mandate pursuant to Executive Order 14043.

B. A declaratory judgment declaring that the Vaccine Mandate pursuant to Executive Order 14043, on its face and as applied, is unconstitutional, unlawful, and unenforceable in that:

(1) The Vaccine Mandate violates the Tenth Amendment by accruing to the Federal Government, and in particular the Office of the President, the health authority that falls under the police power that is reserved to the States;

(2) The Vaccine Mandate violates the Ninth Amendment by invading the carefully guarded Right to Privacy of Plaintiffs and others similarly situated through a) its physical invasiveness; and b) the ongoing collection of private medical information;

(3) The Vaccine Mandate violates the Fifth Amendment Due Process Clause by depriving Plaintiffs and others similarly situated of their liberty interest to control their own health care choices and from a meaningful right to be heard by interpreting 5 U.S.C. §7503 in a way never contemplated by Congress, in the process ignoring the longstanding American custom of carefully guarded privacy in the employer-employee relationships.

(4) The Vaccine Mandate violates the Separation of Powers doctrine by using the Executive's Article II authority to encroach on the Legislature's Article I lawmaking authority.

C.  A temporary restraining order and/or preliminary injunction prohibiting Defendants from commencing the schedule for adverse employment action, beginning **November 8th**, as laid out in Exhibit B.

D.  Enjoining Defendants from further collection of any and all documents collected related to COVID-19 vaccination of Plaintiffs, and of all federal employees, and ordering the destruction of all such records thus far collected;

E.  Enjoining Defendants from requiring burdensome testing requirements on Plaintiffs, such as weekly PCR tests, on account of not declaring their vaccination status;

F.  Enjoining the Secretary of Defense and the Secretary of Health & Human Services from treating Plaintiffs disparately, such as singling them out to be required to wear a mask while others are not or taking any action, disciplinary or otherwise, against the professional status or qualifications of Plaintiffs on account of their not providing their vaccination status;

G. Such other and further relief as the Court deems equitable and just under the circumstances.

DATED: October 19, 2021

Respectfully Submitted,

BY: _____/S/_____
JONATHAN B. BOLLS, ESQ.
P.O. Box 10076
5221 Franconia Road
Alexandria, VA  22310
[T] (703) 593-2354
jonathanbolls@hotmail.com
*Counsel for the Plaintiffs*

**Employee A**

I, ████████ am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _October 15th, 2021_



**Employee B**

I, ███████████████ am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _October 15, 2021_

# EXHIBIT A



# Presidential Documents

Executive Order 14043 of September 9, 2021

## Requiring Coronavirus Disease 2019 Vaccination for Federal Employees

By the authority vested in me as President by the Constitution and the laws of the United States of America, including sections 3301, 3302, and 7301 of title 5, United States Code, it is hereby ordered as follows:

**Section 1**. *Policy*. It is the policy of my Administration to halt the spread of coronavirus disease 2019 (COVID–19), including the B.1.617.2 (Delta) variant, by relying on the best available data and science-based public health measures. The Delta variant, currently the predominant variant of the virus in the United States, is highly contagious and has led to a rapid rise in cases and hospitalizations. The nationwide public health emergency, first declared by the Secretary of Health and Human Services on January 31, 2020, remains in effect, as does the National Emergency Concerning the Coronavirus Disease 2019 (COVID–19) declared pursuant to the National Emergencies Act in Proclamation 9994 of March 13, 2020 (Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak). The Centers for Disease Control and Prevention (CDC) within the Department of Health and Human Services has determined that the best way to slow the spread of COVID–19 and to prevent infection by the Delta variant or other variants is to be vaccinated.

COVID–19 vaccines are widely available in the United States. They protect people from getting infected and severely ill, and they significantly reduce the likelihood of hospitalization and death. As of the date of this order, one of the COVID–19 vaccines, the Pfizer-BioNTech COVID–19 Vaccine, also known as Comirnaty, has received approval from the Food and Drug Administration (FDA), and two others, the Moderna COVID–19 Vaccine and the Janssen COVID–19 Vaccine, have been authorized by the FDA for emergency use. The FDA has determined that all three vaccines meet its rigorous standards for safety, effectiveness, and manufacturing quality.

The health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, are foundational to the efficiency of the civil service. I have determined that ensuring the health and safety of the Federal workforce and the efficiency of the civil service requires immediate action to protect the Federal workforce and individuals interacting with the Federal workforce. It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID–19 to their co-workers and members of the public. The CDC has found that the best way to do so is to be vaccinated.

The Safer Federal Workforce Task Force (Task Force), established by Executive Order 13991 of January 20, 2021 (Protecting the Federal Workforce and Requiring Mask-Wearing), has issued important guidance to protect the Federal workforce and individuals interacting with the Federal workforce. Agencies have also taken important actions, including in some cases requiring COVID–19 vaccination for members of their workforce.

Accordingly, building on these actions, and in light of the public health guidance regarding the most effective and necessary defenses against COVID–19, I have determined that to promote the health and safety of the Federal workforce and the efficiency of the civil service, it is necessary to require COVID–19 vaccination for all Federal employees, subject to such exceptions as required by law.

**Sec. 2**. *Mandatory Coronavirus Disease 2019 Vaccination for Federal Employees.* Each agency shall implement, to the extent consistent with applicable law, a program to require COVID–19 vaccination for all of its Federal employees, with exceptions only as required by law. The Task Force shall issue guidance within 7 days of the date of this order on agency implementation of this requirement for all agencies covered by this order.

**Sec. 3**. *Definitions.* For the purposes of this order:

(a) The term "agency" means an Executive agency as defined in 5 U.S.C. 105 (excluding the Government Accountability Office).

(b) The term "employee" means an employee as defined in 5 U.S.C. 2105 (including an employee paid from nonappropriated funds as referenced in 5 U.S.C. 2105(c)).

**Sec. 4**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of any of its other provisions to any other persons or circumstances shall not be affected thereby.

THE WHITE HOUSE,
*September 9, 2021.*

[FR Doc. 2021–19927
Filed 9–13–21; 8:45 am]
Billing code 3295–F1–P

# EXHIBIT B



🇺🇸 An official website of the United States government   Here's how you know

SAFER FEDERALWORKFORCE

MENU

# Vaccinations

**Vaccination Requirement for Federal Employees**   NEW AND UPDATED    —

**Q: By what date do Federal employees need to be fully vaccinated?**

A: Federal employees need to be fully vaccinated by November 22, 2021.

Employees will be considered fully vaccinated for COVID-19 2 weeks after they have received the requisite number of doses of a COVID-19 vaccine approved or authorized for emergency use by the U.S. Food and Drug Administration or that has been listed for emergency use by the World Health Organization. For Pfizer-BioNTech, Moderna, or AstraZeneca/Oxford, that is 2 weeks after an employee has received the second dose in a 2-dose series. For Johnson and Johnson (J&J)/Janssen, that is 2 weeks after an employee has received a single-dose.

More information is available at Interim Clinical Considerations for Use of COVID-19 Vaccines | CDC.

**Q: By what date do Federal employees need to have had their doses of a COVID-19 vaccination?**

A: Federal employees must receive their last dose of their vaccine no later than November 8, 2021, to meet the November 22, 2021 deadline to be fully vaccinated.

The timing between the first and second shots depends on which vaccine is received.

If someone receives the:

- Pfizer-BioNTech COVID-19 vaccine, then that person should get their second shot 3 weeks (or 21 days) after the first. This means for Federal employees to meet the vaccination deadline, they should receive their first vaccination no later than October 18. They would not be eligible for the second dose until November 8, which is the deadline by which they need to have received both shots.

- Moderna COVID-19 vaccine, then that person should get their second shot 4 weeks (or 28 days) after their first. This means for Federal employees to meet the vaccination deadline, they should receive their first vaccination no later than October 11. They would not be eligible for the second dose until November 8, which is the deadline by which they need to have received both shots.

Since the Johnson & Johnson vaccine only has one shot, Federal employees have until November 8 to receive that shot and still meet the November 22, 2021 deadline to be fully vaccinated.

Depending on employees' locations, they may not have all types of vaccines available to them. Agencies should encourage employees to plan ahead and allow enough time to receive all required vaccine doses before the November 8 deadline to have their second shot.

UPDATED **Q: By what date do individuals who start their government service after November 22, 2021 need to be fully vaccinated?**

A: Agencies should require that individuals who start their government service after November 22, 2021, be fully vaccinated prior to their start date, except in limited circumstances where an accommodation is legally required. Agencies should require documentation to prove vaccination prior to the enter on-duty date. However, should an agency have an urgent, mission-critical hiring need to onboard new staff prior to those new staff becoming fully vaccinated, the agency head may delay the vaccination requirement—in the case of such limited delays, agencies should require new hires to be fully vaccinated within 60 days of their start date and to follow safety protocols for not fully vaccinated individuals until they are fully vaccinated.

OPM has issued further guidance to agencies, including suggested language for job opportunity announcements and tentative and final offer letters.

NEW **Q: How does the requirement for federal employees to be fully vaccinated apply to individuals who start their employment after the issuance of EO 14043 but prior to November 22, 2021?**

A: Agencies should require that individuals who start their government service prior to November 22, 2021 be fully vaccinated by November 22, 2021, except in limited circumstances where an accommodation is legally required. Should an agency have an urgent, mission-critical hiring need to onboard new staff who cannot be fully vaccinated by November 22, 2021, the agency head may delay the vaccination requirement—in the case of

such limited delays, agencies should require new hires to be fully vaccinated within 60 days of their start date and to follow safety protocols for not fully vaccinated individuals until they are fully vaccinated.

As soon as possible, agencies should ensure that individuals who will or may start their government service prior to November 22, 2021, are aware of the requirement to be fully vaccinated by that date and how to seek an exception required by law to the vaccination requirement. OPM has issued [further guidance](#) to agencies, including suggested language for job opportunity announcements and tentative and final offer letters.

**Q: To what types of Federal employees does the vaccination requirement apply?**

A: The vaccination requirement in Executive Order 14043 (Requiring Coronavirus Disease 2019 Vaccination for Federal Employees) covers employees as defined in 5 U.S.C. 2105 (including an employee paid from nonappropriated funds as referenced in 5 U.S.C. 2105(c)). Agencies are strongly encouraged to require vaccinations for any employees or other personnel working under an agreement with an agency not covered by the Executive Order, consistent with applicable law and in consultation with the Safer Federal Workforce Task Force. Implementation of such additional requirements should generally follow the Safer Federal Workforce Task Force's guidance for implementing the vaccination requirement in Executive Order 14043.

**Q: Does the requirement to be vaccinated apply to Federal employees who are not reporting to the worksite (e.g., are on maximum telework or working remotely)?**

A: Yes. To protect the health and safety of the Federal workforce and to promote the efficiency of the civil service, all Federal employees covered by Executive Order 14043 and without a legally required exception need to be [fully vaccinated](#) by November 22, 2021, regardless of where they are working. Employees who are on maximum telework or working remotely are not excused from this requirement, including because employees working offsite may interact with the public as part of their duties and agencies may need to recall employees who are on maximum telework or working remotely.

**Q: Do agencies need to provide onsite vaccinations to their employees?**

A: No. Agencies should take steps to make their employees aware of convenient opportunities to be vaccinated. Given the [widespread availability of vaccinations](#), it is not required that agencies provide vaccinations at their facilities or worksites, although agencies may choose to do so.

**Vaccination Documentation and Information**  NEW                              +

**Limited Exceptions to Vaccination Requirement**  NEW                          +

**Enforcement of Vaccination Requirement for Employees**  UPDATED              +

**Visitors and Onsite Federal Contractors**                                    +

**Labor Relations Related to Vaccination**                                     +

**Safety Protocols Related to Vaccination**                                    +



For questions or comments, email the Safer Federal Workforce Task Force at
SaferFederalWorkforce@gsa.gov

  

🇺🇸 An official website of the United States government  Here's how you know



MENU

# Vaccinations

| **Vaccination Requirement for Federal Employees**  NEW AND UPDATED | + |
|---|---|

| **Vaccination Documentation and Information**  NEW | — |
|---|---|

### Q: Must agencies require documentation from employees to prove vaccination status?

A: Yes, agencies must require documentation from employees to prove vaccination, even if an employee has previously attested to their vaccination status. Employees may provide a copy of the record of immunization from a health care provider or pharmacy, a copy of the COVID-19 Vaccination Record Card, a copy of medical records documenting the vaccination, a copy of immunization records from a public health or state immunization information system, or a copy of any other official documentation containing required data points. The data that must be on any official documentation are the type of vaccine administered, date(s) of administration, and the name of the health care professional(s) or clinic site(s) administering the vaccine(s). Employees must certify under penalty of perjury that the documentation they are submitting is true and correct.

Employees may provide a digital copy of such records, including, for example, a digital photograph, scanned image, or PDF of such a record that clearly and legibly displays the information outlined above. In requesting this information, agencies should comply with any applicable Federal laws, including requirements under the Privacy Act and Rehabilitation Act of 1973.

### NEW  Q: Can an employee provide a recent antibody test in order to prove vaccination status?

A: No. An employee must provide the required documentation for proof of vaccination. A recent antibody test cannot be used to prove vaccination status.

**Q: How should agencies maintain documentation provided by employees regarding vaccination?**

A: Agencies must collect certain information necessary to verify that an employee is fully vaccinated. This includes the type of vaccine administered, the number of doses received, date of administration of each dose, and the submission of an approved form of required documentation, as set forth in this guidance. When providing this information, employees must also be required to certify under penalty of perjury that the information they are submitting is true and correct.

Agencies have unique operational environments and may develop their own processes to both collect and maintain the required information, in compliance with all applicable laws and in accordance with their agency record management policies. Accordingly, agencies may develop and use new processes, systems, tools, and applications to collect and maintain the required information or choose to leverage existing processes, systems, tools, or applications previously established to collect Certification of Vaccination forms. Agency systems, processes, tools, and applications for the collection of this information must allow an employee to update their vaccination status and related information.

The collection and use of this information for many agencies is subject to the OPM/GOVT-10 Employee Medical File system of records notice (SORN) and OPM regulations (5 C.F.R. part 293, subpart E). Under those rules, each agency must have written instructions for its EMF system with appropriate safeguards. Employees must be provided with a Privacy Act statement at the point of collection of this information. Agencies that are not subject to OPM's regulations (or who employ categories of employees not covered by OPM/GOVT-10) must give their employees an alternative Privacy Act statement. As a general rule, this information should not be maintained in the Official Personnel Folder.

Agencies are encouraged to take steps to promote privacy and IT security, while also providing the relevant information to those who need to know in order to implement the safety protocols. Agencies should consult with their Agency Records Officer, Chief Information Officer, Senior Agency Official for Privacy, and agency's legal counsel to determine the best means to maintain this information to meet the agency's needs.

**Q: Which individuals within an agency should have access to information on employees' vaccination status?**

A: The Privacy Act permits disclosure within the agency to employees "who have a need for the record in the performance of their duties." 5 U.S.C. 552a(b)(1). Agencies should only

disseminate information to the appropriate agency officials who have a need to know to ensure effective implementation of the safety protocols, which, in many cases, will include the supervisor level. Agencies must comply with the requirements of the Privacy Act at all times. Agencies should consult with their Senior Agency Official for Privacy on any questions related to Privacy Act requirements.

**Q: Should agencies require documentation from visitors to verify their attestation of vaccination status?**

A: Visitors (except those seeking a public benefit or service, who do not need to attest to or otherwise document vaccination status) must attest to their vaccination status using the [Certification of Vaccination form](#), but agencies should not ask them for documentation to verify their attestation.

**Q: Should agencies require documentation from onsite contractor employees to verify their attestation of vaccination status?**

A: Prior to contractor employees being subject to a contractual requirement to be vaccinated, onsite contractor employees need only attest to their vaccination status using the [Certification of Vaccination form](#).

For onsite contractor employees who are not yet subject to a contractual requirement to be vaccinated, agencies should not ask them for documentation to verify their attestation. When a contractor employee discloses that they are unvaccinated or declines to complete the attestation, agencies should treat that individual as not fully vaccinated for purposes of implementing safety measures.

If the agency has reasonable grounds to believe that an onsite contractor employee made a false statement on the Certification of Vaccination form, the agency may require that the contractor verify the contractor employee's vaccination documentation and confirm to the agency that the employee has been vaccinated, as part of the agency's review of the matter. If an onsite contractor employee who has attested to being vaccinated exhibits symptoms of COVID-19 illness, the agency should apply its safety protocols, but this is not an appropriate reason to request documentation to verify vaccination status.

| Limited Exceptions to Vaccination Requirement  **NEW** | + |
| --- | --- |

| Enforcement of Vaccination Requirement for Employees  **UPDATED** | + |
| --- | --- |

**Visitors and Onsite Federal Contractors**                                       **+**

**Labor Relations Related to Vaccination**                                        **+**

**Safety Protocols Related to Vaccination**                                       **+**



Find COVID-19
Vaccines Near You

**Visit Vaccines.gov**

**Or Call 1-800-232-0233**

For questions or comments, email the Safer Federal Workforce Task Force at
SaferFederalWorkforce@gsa.gov

 

🇺🇸 An official website of the United States government    Here's how you know



SAFER
FEDERALWORKFORCE

MENU

# Vaccinations

**Vaccination Requirement for Federal Employees**  NEW AND UPDATED    ＋

**Vaccination Documentation and Information**  NEW    ＋

**Limited Exceptions to Vaccination Requirement**  NEW    ＋

**Enforcement of Vaccination Requirement for Employees**  UPDATED    －

UPDATED    **Q: What steps may an agency take if a Federal employee refuses to be vaccinated or provide proof of vaccination?**

A: Employees covered by Executive Order 14043 who fail to comply with a requirement to be fully vaccinated or provide proof of vaccination and have neither received an exception nor have an exception request under consideration, are in violation of a lawful order. Employees who violate lawful orders are subject to discipline, up to and including termination or removal.

Consistent with the Administration's policy, agencies should initiate an enforcement process to work with employees to encourage their compliance. Accordingly, agencies should initiate the enforcement process with a brief period of education and counseling (5 days), including providing employees with information regarding the the benefits of vaccination and ways to obtain the vaccine. If the employee does not demonstrate progress toward becoming fully vaccinated through completion of a required vaccination dose or provision of required documentation by the end of the counseling and education period, it should be followed by a short suspension (14 days or less). Continued noncompliance during the suspension can be followed by proposing removal. Unique operational needs of agencies and the circumstances affecting a particular employee may warrant departure from these guidelines if necessary, but consistency across government in enforcement of

this government-wide vaccine policy is desired, and the Executive Order does not permit exceptions from the vaccination requirement except as required by law.

Agencies may initiate the enforcement process as soon as November 9, 2021, for employees who fail to submit documentation to show that they have completed receiving required vaccination dose(s) by November 8, as long as those employees have not received an exception and the agency is not considering an exception request from the employee.

If an employee responds at any phase of the discipline by submitting proof of progress toward full vaccination (i.e., completion of a required vaccination dose), the agency should hold the discipline in abeyance to afford the employee a reasonable period of time to become fully vaccinated. In pursuing any adverse action, the agency must provide the required procedural rights to an employee and follow normal processes, including any agency policies or collective bargaining agreement requirements concerning disciplinary matters. Employees should not be placed on administrative leave while pursuing an adverse action for refusal to be vaccinated but will be required to follow safety protocols for employees who are not fully vaccinated when reporting to agency worksites.

If the employee claims a legally required exception as the reason for not being vaccinated, an agency should follow its ordinary process to review and consider what, if any, accommodation it must offer. All agency personnel designated to receive requests for accommodations should know how to handle requests consistent with the Federal employment nondiscrimination laws that may apply. If the employee's request for an exception is denied, and the employee does not comply with the vaccination requirement, the agency may pursue disciplinary action, up to and including removal from Federal service.

OPM has issued additional guidance to further assist agencies with enforcing the vaccination requirement for Federal employees.

**Visitors and Onsite Federal Contractors**                                    +

**Labor Relations Related to Vaccination**                                     +

**Safety Protocols Related to Vaccination**                                    +



# Find COVID-19 Vaccines Near You

**Visit Vaccines.gov**

**Or Call <u>1-800-232-0233</u>**

For questions or comments, email the Safer Federal Workforce Task Force at
<u>SaferFederalWorkforce@gsa.gov</u>

 

# EXHIBIT C



October 1, 2021

**MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES**

FROM:        Kiran A. Ahuja
                  Director

Subject:     Guidance on Enforcing Coronavirus Disease 2019 Vaccination Requirement for Federal Employees – Executive Order 14043

On September 9, 2021, President Biden signed Executive Order (EO) 14043, titled, "Requiring Coronavirus Disease 2019 Vaccination for Federal Employees." As stated in Section 1 of the EO, the President has determined that in order to promote the health and safety of the workforce and the efficiency of the civil service, it is necessary for all agencies to require COVID–19 vaccination for Federal employees covered by EO 14043, subject only to such exceptions as required by law.

As directed in the EO, the Safer Federal Workforce Task Force, established by EO 13991 (January 20, 2021) ("Task Force"), has issued guidance to assist agencies with implementing the vaccination requirement. That guidance specifies that agencies should require all of their employees, with exceptions only as required by law, to be fully vaccinated by November 22, 2021.

People are considered fully vaccinated two weeks after their second shot in a two-dose series, or two weeks after a single-shot series. In order to have covered Federal employees vaccinated by November 22, 2021, agencies should inform employees of the following scheduling considerations, based on the type of vaccine they obtain:

- For Pfizer-BioNTech COVID-19 vaccine, individuals should get their second shot 3 weeks (or 21 days) after the first. This means that in order for Federal employees to meet a November 22 deadline, they should receive their first vaccination no later than October 18, and their second dose no later than November 8.

- For Moderna COVID-19 vaccine, individuals should get their second shot 4 weeks (or 28 days) after their first. This means that in order for Federal employees to meet a November 22 deadline, they should receive their first vaccination dose no later than October 11, and their second dose no later than November 8.

- Because the Johnson & Johnson/Janssen vaccine only has one shot, Federal employees must get that dose by November 8, in order to meet a November 22, 2021 deadline to be fully vaccinated.

Of course, it is advisable not to leave vaccinations to the last possible date, as other events often interfere with even well-laid plans.

Employees who refuse to be vaccinated or provide proof of vaccination are subject to disciplinary measures, up to and including removal or termination from Federal service. The

only exception is for individuals who receive a legally required exception pursuant to established agency processes.

Given this timeline, agencies may initiate the enforcement process as soon as November 9, 2021, for employees who have not completed their vaccination dose(s) by November 8. The attached provides additional guidance for Federal agencies and employees on the recommended approach agencies should take regarding enforcement of the Coronavirus Disease 2019 vaccination requirement. Agencies should consult with agency human resources offices and legal counsel to determine application of agency disciplinary policies and collective bargaining agreement requirements on disciplinary matters.

**Additional Information**

Agency headquarters-level human resources offices may contact OPM at employeeaccountability@opm.gov with additional questions. Agency field offices should contact their appropriate headquarters-level agency human resources offices. Guidance from the Task Force is available at: https://www.saferfederalworkforce.gov/overview/

cc:     Chief Human Capital Officers (CHCOs)
        Deputy CHCOs
        Human Resources Directors

Attachment – Enforcement Guidance (see 508-conformant PDF below)

# EXHIBIT D

**Privacy Act Statement**

**Authority:** Pursuant to 5 U.S.C. chapters 11 and 79, and in discharging the functions directed under Executive Order 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees (Sept. 9, 2021), we are authorized to collect this information. The authority for the system of records notice (SORN) associated with this collection of information, OPM/GOVT-10, Employee Medical File System of Records, 75 Fed. Reg. 35099 (June 21, 2010), amended 80 Fed. Reg. 74815 (Nov. 30, 2015), also includes 5 U.S.C. chapters 33 and 63 and Executive Order 12196, Occupational Safety and Health Program for Federal Employees (Feb. 26, 1980). Providing this information is mandatory, and we are authorized to impose penalties for failure to provide the information pursuant to applicable Federal personnel laws and regulations.

**Purpose:** This information is being collected and maintained to promote the safety of Federal workplaces and the Federal workforce consistent with the above-referenced authorities, Executive Order 13991, Protecting the Federal Workforce and Requiring Mask-Wearing (Jan. 20, 2021), the COVID-19 Workplace Safety: Agency Model Safety Principles established by the Safer Federal Workforce Task Force, and guidance from Centers for Disease Control and Prevention and the Occupational Safety and Health Administration.

**Routine Uses:** While the information requested is intended to be used primarily for internal purposes, in certain circumstances it may be necessary to disclose this information externally, for example to disclose information to: a Federal, State, or local agency to the extent necessary to comply with laws governing reporting of communicable disease or other laws concerning health and safety in the work environment; to adjudicative bodies (e.g., the Merit System Protection Board), arbitrators, and hearing examiners to the extent necessary to carry out their authorized duties regarding Federal employment; to contractors, grantees, or volunteers as necessary to perform their duties for the Federal Government; to other agencies, courts, and persons as necessary and relevant in the course of litigation, and as necessary and in accordance with requirements for law enforcement; or to a person authorized to act on your behalf. A complete list of the routine uses can be found in the SORN associated with this collection of information.

**Consequence of Failure to Provide Information:** Providing this information is mandatory. Unless granted a legally required exception, all covered Federal employees are required to be vaccinated against COVID-19 and to provide documentation concerning their vaccination status to their employing agency. Unless you have been granted a legally required exception, failure to provide this information may subject you to disciplinary action, including and up to removal from Federal service.