IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ISRAEL RYDIE, et al.          :

    v.                         :   Civil Action No. DKC 21-2696

JOSEPH R. BIDEN, in his official
capacity as President of the  :
United States, et al.
                                     :

**MEMORANDUM OPINION**

This is one of a growing number of cases challenging various aspects of the federal employee COVID-19 vaccination requirements. Currently pending and ready for resolution is Plaintiffs' motion for a preliminary injunction. (ECF No. 7).[1] The issues have been fully briefed, (ECF Nos. 21; 23), and a hearing was held on November 18, 2021. For the following reasons, Plaintiffs' motion will be denied.

**I.   Background**

On September 9, 2021, President Biden issued Executive Order 14,043 requiring that all federal government employees be vaccinated against COVID-19, with exceptions as required by law.

---

[1] Plaintiffs also styled their motion as one for a temporary restraining order but did not attempt to proceed *ex parte* or with the required urgency. The motion is addressed as one for preliminary injunction only.

(ECF No. 13-1, at 24 (Exhibit A)).[2]  The President determined that this policy was necessary because COVID-19 threatens "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, [which] are foundational to the efficiency of the civil service."  (*Id.*).  Subsequently announced guidance requires employees to be fully vaccinated by November 22.  (*Id.*, at 27 (Exhibit B)).  Employees were required to provide documentation that they received a one-dose vaccine or the second dose of a two-dose vaccine by November 8, 2021.  (*Id.*, at 31, 35-36 (Exhibit B)).

The requirement is not being enforced immediately and is applied consistent with different escalating enforcement processes at each federal agency.  (ECF No. 13-1, at 35-36).  Agencies are encouraged to initiate the process with education and counseling and progress to a suspension of up to fourteen days before taking the ultimate step of proposed termination.  (*Id.*).  Agencies can adopt their own timelines and make adjustments for individual employees but cannot except anyone from the requirement unless required by law.  (*Id.*).

Plaintiffs are civilian federal employees subject to the vaccine requirement.  One works at the Defense Information Systems

---

[2] ECF No. 13-1 is the unredacted version of the complaint initially filed at ECF No. 1.  It was unsealed after the court denied Plaintiffs' motion to proceed anonymously, (ECF No. 24), and is a single PDF document, even though it includes attachments.

Agency ("DISA") and the other works at the Food and Drug Administration ("FDA"). (ECF No. 13-1, ¶¶ 16, 20). They claim that they will be fired imminently because they will refuse to report their vaccination status. (*Id.*, ¶¶ 18-19, 22-23). They have not applied for exceptions and do not intend to do so. (ECF No. 23, at 6). During an unrecorded teleconference on October 29 and at the November 18 hearing, counsel for Defendants indicated that DISA and the FDA would not finalize any proposed termination before January 2022.

**II. Analysis**

Plaintiffs request a nationwide preliminary injunction prohibiting Defendants from collecting or retaining information about vaccination status and from making vaccination a condition of employment. They argue that, in adopting such practices, the Defendants violate: (1) federalism principles,[3] (2) separation of powers principles, (3) the right to due process, and (4) the individual rights to bodily integrity and privacy. (ECF No. 7, at 3-20). They claim that they will be fired for refusing to report their vaccination status, and that their reputations and future employment opportunities will be harmed because they will receive

---

[3] Plaintiffs suggest this argument is grounded in the "Separation of Powers doctrine[.]" (ECF No. 7, at 3-7). It is more aptly grounded in the federalism doctrine because Plaintiffs cite to the Tenth Amendment and argue that the federal government is exercising powers retained by the states.

a "mark of misconduct on [their] Official Personnel File[s.]" (*Id.*, at 20-21; *see also* ECF No. 13-1, at 12-14). They may also claim that they are currently harmed by the change in their conditions of employment.[4]

Preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quotation omitted). The Supreme Court has held that the party seeking a preliminary injunction must demonstrate that: (1) the party is likely to succeed on the merits "by a clear showing"; (2) the party is likely to suffer irreparable harm, also by a "clear showing," in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) preliminary injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371 (Mem) (2010). Where the government is the defendant, courts analyze the third and fourth factors together. *Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). None of the factors are satisfied here.

---

[4] Plaintiffs' have not stated on the record whether they are vaccinated or intend to be. The court assumes for this motion that Plaintiffs object to vaccination because their bodily autonomy claim would otherwise be meritless.

**A.   Likelihood of Success on the Merits**

Plaintiffs have not shown that they are likely to succeed. It may well be that this court lacks the authority to adjudicate their case or to order some of the requested relief. Even if it can adjudicate the case, Plaintiffs have not shown that they are likely to prevail on any of their constitutional arguments.

**1.   Federal Court Authority**

**a)   Subject Matter Jurisdiction**

Federal district courts generally have original jurisdiction over civil actions requesting equitable relief that arise "'under the Constitution, laws, or treaties of the United States.'" *See Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir. 2016) (quoting 28 U.S.C. § 1331). But Congress can "impliedly preclude jurisdiction by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." *Id.* (citations omitted).

Under the Civil Service Reform Act ("CSRA"), federal employees can appeal certain serious adverse employment actions directly to the Merit Systems Protection Board ("MSPB") and the Federal Circuit. *See* 5 U.S.C. §§ 7513(d); 7703(b)-(c). Those adverse actions include termination. 5 U.S.C. § 7512. In *Elgin v. Department of Treasury*, the Supreme Court held that "the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that

5

[it] is unconstitutional." 567 U.S. 1, 5 (2012). To the extent Plaintiffs challenge their future terminations, they likely have to proceed through the CSRA process, even though they assert constitutional challenges. Plaintiffs also raise their future receipt of a mark of misconduct and possibly the current change in their "conditions" of employment. These claims share the same underlying facts and therefore likely "fall under the [same] umbrella" for CSRA purposes. *See Lim v. United States*, No. 10-cv-2574-DKC, 2011 WL 2650889, at *6 (D.Md. July 5, 2011); *see also Elgin*, 567 U.S. at 22.

In any case, employees can challenge less severe actions that violate "prohibited personnel practices," including constitutional violations, by filing a complaint with the Office of Special Counsel ("OSC"). 5 U.S.C. §§ 1214(a)(1)(A); 2302(a)(2)(A); 2302(b)(12); *see also id.* § 2301(b)(2); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1432-33 (D.C. Cir. 1996). If the OSC determines that the practice was improper, it can recommend changes to the agency and then petition the MSPB to order corrective action. 5 U.S.C. § 1214(b)(2)(B)-(C). If the MSPB denies the petition, harmed employees can appeal to the Federal Circuit. *Id.* §§ 1214(c); 7703(b)-(c). The Fourth Circuit held in an unpublished opinion that formal reprimands can be challenged this way, that the OSC process is part of the comprehensive CSRA scheme, and that it precludes district court jurisdiction (unless an employee were

6

not allowed to appeal a constitutional challenge to the Federal Circuit). *Fleming v. Spencer*, 718 F.App'x 185, 186, 188 & 188 n.2 (4th Cir. 2018); *see also NASA v. Nelson*, 562 U.S. 134, 149 (2011) ("[I]f every employment decision became a constitutional matter, the Government could not function." (cleaned up)).  Plaintiffs do not argue that they attempted to exhaust this process, that *Fleming* does not apply, or that it was wrongly decided.

It is Plaintiffs' burden to establish subject matter jurisdiction, and their showing is questionable at best.

**b)   Equitable Power**

Even if Plaintiffs can bring suit in this court now, they cannot obtain the relief they seek against President Biden. Federal courts are generally without power to enjoin the President. *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992); *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir.), *vacated on other grounds*, 138 S.Ct. 353 (Mem) (2017).  As a result, Plaintiffs can only request injunctions specific to Secretaries Austin and Becerra and the Departments they lead.  Those requests for preliminary injunctive relief also fail for the reasons discussed below.

**2.   Federalism and Separation of Powers**

Plaintiffs' federalism and separation of powers arguments are insubstantial because the executive branch has wide authority to establish and enforce requirements of employment within the

7

federal government. "Time and again [the Supreme Court has] recognized that the Government has a much freer hand in dealing with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Nelson*, 562 U.S. at 148 (quotation omitted). Plaintiffs argue that states' retention of power over public health prohibits the federal government from acting in that sphere. Plaintiffs are wrong. The federal government's exercise of its enumerated powers does not infringe on powers reserved to the states under the Tenth Amendment. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291-92 (1981); *see also* U.S. Const. art. VI, cl. 2. The executive power to manage federal officers is clearly conferred in the Constitution. *See* U.S. Const. art. II, § 1, cl. 1.

Plaintiffs also argue that President Biden improperly exercised the legislative power and encroached on Congress's authority. This argument is meritless, in addition to being inconsistent with Plaintiffs' federalism argument. The President derives his authority to regulate the federal workforce from the Constitution, not from Congress's enactments. *See* U.S. Const. art. II, § 1, cl. 1. "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quotation omitted). Although Congress can limit the scope of the President's

discretion in this arena, it endorsed his action here. The civil service laws state that the President may "prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301, and terminate employees for cause, 5 U.S.C. § 7513(a). Those statutes also make clear that employees' fitness and health are relevant to their job performance. 5 U.S.C. § 3301(2).

### 3. Due Process

Plaintiffs' procedural due process argument is equally meritless. They contend that Defendants "seek to implement the Vaccine Mandate by summary dismissal of Plaintiffs . . . without a meaningful opportunity to be heard." (ECF No. 13-1, ¶ 58). Any cognizable property or liberty interest Plaintiffs have in their federal employment is protected by ample procedures. Because the CSRA provides for a full post-termination hearing, 5 U.S.C. § 7701, the sole question is whether Defendants' enforcement of the vaccine requirement will offer a sufficient "opportunity for a hearing before" discharge. *See Curtis v. Montgomery Cnty. Pub. Schs.*, 242 F.App'x 109, 111 (4th Cir. 2007) (unpublished) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).

A public employee is "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (quoting *Loudermill*, 470 U.S. at 546). Neither party has identified the procedures formally adopted by DISA and the FDA to enforce the

9

Executive Order.  But both agencies must comply with civil service laws that afford Plaintiffs all the process that they are due. *See* 5 U.S.C. § 7513 (requiring 30 days' notice, at least seven days to answer, and a written decision).[5]  Plaintiffs offer nothing to suggest that Defendants will not follow these requirements.

The remaining arguments included within Plaintiffs' broader Due Process challenge are also baseless.  Plaintiffs have not clearly shown that a protected liberty interest is deprived by the government making vaccination a condition of employment.  They remain free from bodily restraint and free to contract for future employment.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972).  Nor have they shown that the President exceeds his authority by adopting the requirement, as discussed above.

   4.   **Bodily Integrity and Privacy Rights**

Plaintiffs' bodily integrity and privacy arguments are also ill conceived.  Plaintiffs argue that the vaccine requirement violates their right to make informed choices about their own medical treatment.  (ECF No. 7, at 7, 11, 14). Although this right is well-established, it is narrowly drawn and does not reach this case.  The right is grounded in "the common-law rule that forced medication was a battery[.]"  *Washington v. Gluckberg*, 521 U.S.

---

[5] Plaintiffs cite to 5 U.S.C. § 7503 which establishes the procedures for less serious adverse actions.  5 U.S.C. § 7513 establishes the procedures for terminations.

10

702, 725 (1997). Cases that have implicated this right dealt with the forced administration of medical treatments to individuals without the capacity to refuse care – an individual in a vegetative state in *Cruzan ex rel. Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 284 (1990), and a prisoner in *Washington v. Harper*, 494 U.S. 210, 236 (1990). Short of removing a person's capacity to refuse treatment, the government is not "required to remain neutral" toward individuals' choices. *See Cruzan*, 497 U.S. at 280. Making vaccination a condition of employment does not cross the line into battery or reach the level of coercion necessary to infringe this fundamental liberty interest. In addition, nothing here suggests Plaintiffs are being denied the information necessary to make an informed choice. *See Klaassen v. Trs. of Ind. Univ.*, No. 21-cv-0238-DRL, 2021 WL 3073926, at *25 (N.D.Ind. July 18, 2021), *mot. for inj. pending appeal denied*, 7 F.4th 592 (7th Cir. 2021).

There also is no related right to refuse vaccination "deeply rooted in this Nation's history and tradition[.]" *Glucksberg*, 521 U.S. at 721 (quotation omitted). Quite the opposite. There is a long tradition of upholding *mandatory* vaccination laws under rational basis scrutiny because they were necessary to the public health. *See Jacobson v. Massachusetts*, 197 U.S. 11, 25-30, 37-38 (1905); *see also Zucht v. King*, 260 U.S. 174, 176-77 (1922); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F.App'x 348, 355-56 (4th

Cir. 2011) (unpublished).  "[E]very court that has considered the constitutionality of a COVID-19 vaccine mandate by an employer or university has" held that it satisfied rational basis scrutiny. *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688, at *6-7 (D.N.J. Nov. 8, 2021) (citations omitted).  Even if the vaccine requirement implicated a fundamental right, it might survive strict scrutiny. *See Does 1-6 v. Mills*, No. 21-1826, 2021 WL 4860328, at *7 (1st Cir. Oct. 19, 2021).

Plaintiffs' information privacy argument fares no better. Any right to keep information private does not prohibit the government from requesting information reasonably related to its role as an employer, so long as the information is protected by the Privacy Act.  *Nelson*, 562 U.S. at 147-48.  It is reasonable for the government to request employees' vaccination status in light of the risks posed by COVID-19 and that information is likely protected by the Privacy Act.  *See* 5 U.S.C. § 552(a)-(b).

**B.   Likelihood of Irreparable Harm**

Plaintiffs have not shown that they are likely to suffer irreparable harm.  Harms are irreparable where they "cannot be fully rectified by the final judgment after trial."  *Mtn. Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quotation omitted).  Under ordinary circumstances, loss of employment is not an irreparable harm.  *Sampson v. Murray*, 415 U.S. 61, 89-92 & 92 n.68 (1974).

Neither are formal reprimands and their effects on an employee's reputation and employment prospects. *Id.* Assuming Plaintiffs are terminated before they obtain a favorable judgment, their injury can be fully redressed through reinstatement, backpay, and expungement of any mark of misconduct.

Plaintiffs point to nothing extraordinary about their likely harms. They have not clearly shown, for example, that their likely discharge will result from policies that "bear[] no relationship to their ability to perform their jobs" or that they will face the sort of severe and improper stigma as those who disclose their HIV-positive status. *See Roe*, 947 F.3d at 229. Nor is the court persuaded by Plaintiffs' argument on reply that the government will fail to meet its financial obligations should it be ordered to grant backpay to thousands of discharged employees. Finding that Plaintiffs' employment-based harms are not irreparable is also consistent with various recent decisions in similar cases. *E.g.*, *Altschuld v. Raimondo*, No. 21-cv-2779, ECF No. 23, slip op. at 8 (D.D.C. Nov. 8, 2021); *Church v. Biden*, No. 21-cv-2815, ECF No. 17, slip op. at 31-32 (D.D.C. Nov. 8, 2021).[6]

---

[6] Because Plaintiffs' alleged harms can be fully repaired, there is no need to reach Defendants' argument that Plaintiffs' employment injuries are not imminent.

13

**C.   Balance of Equities and Public Interest**

The balance of the equities and the public interest weigh heavily against granting a preliminary injunction.  As discussed above, any injuries Plaintiffs face can be remedied at a later date.  By contrast, an injunction barring enforcement of the vaccine requirement for federal employees would do substantial and irreparable harm to the public health and to the federal government's effectiveness.

COVID-19 poses significant and ongoing risks to the lives and health of millions of Americans and federal workers, particularly those who are unvaccinated.  The government's attempt to stem its spread, which is "unquestionably a compelling interest," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020), would be impeded by an injunction.  In addition, the President determined that the health and safety of the federal workforce is "foundational to the efficiency of the civil service."  Exec. Order No. 14,043, 86 Fed. Reg. at 50,989.  The effective administration of the federal government, in which Defendants and the public have a deep and abiding interest, would likely be hampered by an injunction.

Plaintiffs do not challenge the severity of the public health risk or the safety and effectiveness of the vaccines.  Nor do they meaningfully identify alternative methods by which the government could achieve its goal of a fully functioning federal workforce.

Indeed, Plaintiffs suggested at the hearing that simply continuing with the measures implemented since March 2020, without mandating vaccinations, would enable the federal government to operate until the pandemic ends, saying, "This too shall pass."

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction will be denied. A separate order will follow.

                                    /s/
                            DEBORAH K. CHASANOW
                            United States District Judge